**P SEND JS-6**

ENTERED
CLERK U.S. DISTRICT COURT
ENTERED
AUG 29 2002
CENTRAL DISTRICT OF CALIFORNIA
BY

FILED
CLERK, U.S. DISTRICT COURT
08-28-02
AUG 28 2002
CENTRAL DISTRICT OF CALIFORNIA
DEP

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Dorris, James,<br><br>Plaintiff,<br><br>v.<br><br>A.P. Green Services,<br><br>Defendant. | **Case No. CV 02-2737-GAF** ✓<br><br>**ORDER REMANDING ACTION TO STATE COURT** (BC267086)<br><br>✓ Docketed<br>✓ Copies / NTC Sent<br>✓ JS - 5 / JS - 6<br>__ JS - 2 / JS - 3<br>__ CLSD |

In December 2001, Judge Wolin provisionally transferred all "Friction Product Claims" relating to the bankruptcy proceeding In re Federal-Mogul Global, Inc., No. 01-10578, et al., to the United States District Court for the District of Delaware, pending final resolution of a motion to transfer venue pursuant to 28 U.S.C. § 157(b)(5). As the "Friction Product Claims" subject to the provisional transfer orders included the claims before this Court, the Court subsequently issued a stay of all proceedings pending further order from Judge Wolin.

On February 8, 2002, Judge Wolin concluded that the district court lacked subject matter jurisdiction over the Friction Product Claims.



15

Therefore, the court denied Defendants' transfer motions and remanded the actions to the state courts from which they were originally removed. (See Appendix A at 4). On appeal, the Third Circuit subsequently ruled that it lacked jurisdiction to review Judge Wolin's decision denying Defendants' transfer motions and remanding the Friction Product Claims to the state courts. In re Federal-Mogul Global, Inc., 2002 WL 1763923, at *18 (3d Cir. July 31, 2002).[74] The Third Circuit, however, found that Judge Wolin's cross-jurisdictional remand order was supported by relevant legal authority. Id. at *15 (citing Bloom v. Barry, 755 F.2d 356 (3d Cir. 1985) and Abels v. State Farm Fire & Cas. Co., 770 F.2d 26 (3d Cir. 1985)).

In light of these opinions, the Court concludes that Judge Wolin's February 8, 2002 Order effectively remanded this action to state court. However, in the event the action remains before this Court, the Court concludes that the law of the case doctrine requires it to remand this action for lack of subject matter jurisdiction. Accordingly, this action is hereby **REMANDED** to state court.

IT IS SO ORDERED.

DATED: August 27, 2002

Judge Gary Allen Feess
United States District Court



[74]The Third Circuit's opinion can also be found at 2002 U.S. App. LEXIS 15331.

**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: FEDERAL-MOGUL GLOBAL, INC., T&N LIMITED, et al., | : | Chapter 11 |
| | : | Case Nos. 01-10578, et al.[1] |
| Debtors. | : | **OPINION** |

ATTEST:
DAVID D. BIRD, CLERK

APPEARANCES:

ALAN B. RICH, ESQ.
BARON & BUDD
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219-4281
(Attorneys for Ad Hoc Committee of Friction Products Plaintiffs)

CHARLES S. SIEGEL, ESQ.
WATERS & KRAUS
3219 McKinney Avenue, Suite 3000
Dallas, TX 75204
(Attorneys for "Waters & Kraus" Friction Products Plaintiffs)

ELIHU INSELBUCH, ESQ.
CAPLIN & DRYSDALE
399 Park Avenue
New York, NY 10022
(Attorneys for Official Asbestos Claimants Committee)

DAVID M. BERNICK, ESQ.
KIRKLAND & ELLIS
200 E. Randolph Drive
Chicago, IL 60601
(Attorneys for "Big Three" Auto Makers)

THOMAS F. CAMPION, JR., ESQ.

[1]See attached list.

**APPENDIX A**

DRINKER, BIDDLE & SHANLEY
500 Campus Drive
Florham Park, NJ 07932
(Attorneys for Honeywell Int'l, Inc.)

ROBERT M. MILLNER, ESQ.
SONNENSCHEIN, NATH & ROSENTHAL
1221 Avenue of the Americas
New York, NY 10020
(Attorneys for Official Unsecured Creditors Committee)

DAVID E. WILKS, ESQ.
WHITE & WILLIAMS
824 North Market Street, Box 709
Wilmington, DE 19899-0709
(Attorneys for International Auto Makers)

**WOLIN, District Judge**

This matter is opened before the Court upon motions pursuant to 28 U.S.C. § 157 to transfer to this Court certain personal injury claims against the movants pending in various United States District Courts based on allegations of exposure to asbestos in products designed to resist heat caused by friction (the "Friction Products Claims"). The movants are DaimlerChrysler Corporation ("Chrysler"), Ford Motor Company ("Ford") and General Motors (collectively with the previously listed parties the "Big Three"), Honeywell International, Inc. ("Honeywell") and Volkswagen of America, Inc., Volkswagen AG, Mercedes-Benz USA, LLC, BMW North America, Inc., Volvo Cars North America, Inc., Rolls Royce Bentley Motor Cars, Inc. and Nissan North America, Inc. (the "International Auto Makers" and collectively with the other movants the "Friction Product

Defendants"). The Court has reviewed the submissions and heard the argument of counsel on February 8, 2002. The Court ruled from the bench at that hearing that the transfer motions would be denied, that the Court lacked subject matter jurisdiction over the Friction Products Claims and that the Friction Product Claims would be remanded to the state courts from which they were originally removed. At the hearing the Court stated that it would supplement the record with a written Opinion on the motions. This is that Opinion.

## BACKGROUND

Movant Friction Product Defendants were until recently parties in state court proceedings in most if not all of the states of the Union defending against allegations of personal injury tort and wrongful death. The claims allege that plaintiffs' injuries were caused by asbestos contained in the defendants' products, brake pads and other applications involving friction. The debtors, Federal-Mogul Global, Inc. and several of its subsidiaries, were co-defendants in many, but not all, of these suits when their chapter 11 petitions were filed on October 1, 2001.

As to the debtors, of course, the bankruptcy filing automatically stayed any state court proceedings. The Court is informed that, after that filing, plaintiffs around the country

immediately began severing claims against the debtors or dismissing their claims against them altogether to permit their cases against the solvent parties to go forward. This aim was thwarted, however, by a massive campaign by the movants of removing claims against them to the local United States District Courts on the theory that these claims were related to the above-captioned bankruptcy proceeding and thus within the bankruptcy jurisdiction of the federal courts. An illustrative though incidental fact demonstrating the procedural stakes at issue here is that case load statistics for each of the various districts immediately ballooned. Judge Pauley in the Southern District of New York received 1,500 new cases, and the larger and more asbestos-litigation intensive jurisdictions doubtless numbered new filings in the thousands.

Naturally plaintiffs did not remain supine through these events, but immediately fired off a corresponding number of motions to remand. Understandably, district judges around the country moved these motions to the tops of their calendars. The movants riposted on November 20, 2001, with a motion in the Delaware District Court wherein the bankruptcy was pending to transfer, wholesale, all of the removed claims in all of the different district courts to the District of Delaware. This motion was pending when, on November 27, 2001, this Court received the transfer of the above-captioned case and four other

very large asbestos-related chapter 11 cases on November 27, 2001.[2]

The Court was thus confronted with the issues posed by these motions in its earliest days of supervising these bankruptcies. It was represented that various courts were in the process of ruling on the remand motions. Slip opinions forwarded to the Court's attention demonstrated that piecemeal remand and inconsistent retention of the Friction Product Claims was becoming a reality with each passing day. Meanwhile, plaintiffs' counsel clamored that many of their clients were in extremis and not likely to live to see their day in court should the threshold jurisdictional decision be delayed. In fact, given that each adjudicative inconsistency and hardship was multiplied by the tremendous numbers of removed cases, confusion threatened to rule the day.

The movants prayed for relief in two parts. First, they sought an immediate and ex parte provisional transfer of the Friction Product Claims in order to protect them from piecemeal

---

[2] The Court has over-simplified the chronology of events in the interest of narrative coherence. In fact, only the Big Three had progressed through removal to a motion to transfer by the time this Court assumed jurisdiction of the Federal-Mogul bankruptcy. Honeywell and the International Auto Makers followed the lead of the Big Three and began the process of removal and transfer later. Moreover, as subsequent events proved, the initial removal program was not completed all at once, and removal of new cases by each of the movants was ongoing through December.

remand orders. Second, the movants proposed that the Court establish a method by which the large number of parties-at-interest might have their positions heard and that the Court then render a plenary decision on whether the Friction Product Claims would be transferred to this Court. This Court agreed, withdrew the reference to the Bankruptcy Court for the purposes of these motions, and charged the plaintiffs' bar to arrange among themselves who would brief and argue their opposition to the motions. The Court put the parties on notice that, in addition to the narrow issue of transfer pursuant to 28 U.S.C. § 157, the Court would also examine its subject matter jurisdiction and whether abstention or remand might be appropriate.

Events have not stood still despite the Court's best efforts to expedite disposition of the motions. As noted, some cases had already been remanded before the Court's Provisional Transfer Order could issue. Since that date, at least one District Court has refused to be bound by the Court's Provisional Transfer Order and made its own ruling that subject matter jurisdiction was lacking in the case before it. Another federal court reached the same result by interpreting the Provisional Transfer Order to apply only to Friction Product Claims removed before the date of the Order. Finally, the Fifth Circuit Court of Appeals recently denied an application for a stay of remand to the Texas state courts of thirty-seven lawsuits against another Federal-Mogul

subsidiary, Garlock, Inc. The Fifth Circuit denied the application for a stay, finding no likelihood of success in the proposition that Friction Product Claims against Garlock were related to the Federal-Mogul bankruptcy. Arnold v. Garlock, Inc., 2001 WL 1669714 at *11 (5th Cir., Dec. 28, 2001).

Meanwhile, additional provisional transfer and transfer motions have been filed by other Friction Product Claims defendants. Rather than delay the briefing of the already pending motions, the Court granted provisional transfer as to some of these, adjourning without date their briefing. Other motions remain pending. The Court heard oral argument on the plenary motions to transfer on February 8, 2002. This Opinion constitutes the Court's plenary ruling on the motions to transfer the Friction Product Claims to this Court.

## DISCUSSION

### 1. Subject Matter Jurisdiction

The bankruptcy removal statute is 28 U.S.C. § 1452(a):

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim under section 1334 of this title.

Section 1334(a) establishes subject matter jurisdiction in the

United States District Courts for all cases under Title 11, but extends this power as well to "civil proceedings . . . arising in or related to cases under title 11." See id. § 1334(b). "Related to" is a term of art, and jurisdiction under the "related to" clause has been defined by the United States Supreme Court to include litigation of claims owned by the debtor's estate and, relevant here, litigation between third parties that has an effect on the estate. Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.5 (1995).

The leading case in this area is our own Third Circuit's Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984). Pacor addressed whether an asbestos-related personal injury lawsuit against a non-debtor was related to the Johns-Manville chapter 11 proceeding on the ground that the non-debtor defendant had asserted a third-party claim of indemnification against Johns-Manville as the original manufacturer of the asbestos. While acknowledging the wide jurisdiction granted by Congress to federal bankruptcy courts to facilitate the administration of debtors' estates, the Court of Appeals noted that this jurisdiction is "not without limit." "Related to" jurisdiction still requires "some nexus between the 'related' civil proceeding and the title 11 case," the court explained. Id. at 994.

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any

> effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.
>
> On the other hand, the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1471(b) [now 1334(b)]. [J]urisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist.

Id. at 994 (citations and internal quotation omitted)(emphasis and second alteration in original).

But a valid statement of principle does not necessarily produce a usable rule, and whether a controversy "could have any effect on the estate" will not always be self-evident. In Pacor, a bare claim of common-law indemnity was not enough. The Court of Appeals found "at best it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville" in which the debtor would be free to relitigate any issue necessary to the prior judgment. Id. at 995. On these facts, the Pacor court found that the "the bankruptcy estate could not be affected in any way until the Pacor-Manville third party action is actually brought and tried." Id.

The narrow holding of Pacor was that a mere common-law indemnity claim by a non-debtor co-defendant of a debtor will not "alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)" in a way that "impacts upon the handling and administration of the bankruptcy estate." Id. at 994. That common facts would be litigated against the co-defendant did not matter, because no resolution of a factual issue would be binding on the debtor's estate.[3] The potential for a judgment against the debtor posed by the existence of a suit against the non-debtor was not only contingent (the non-debtor defendant might prevail) but it was indirect - any material effect on the estate would require yet another lawsuit. Id. at 995.

The United States Supreme Court's holding in Celotex Corp. v. Edwards is consistent with a narrow reading of Pacor, notwithstanding the contrary result on the jurisdictional issue. 514 U.S. 300 (1995). There asbestos claimants sought to execute on a supersedeas bond following an unsuccessful appeal by their judgment debtor. The bond was secured by cash owed to the debtor

[3] Actually, under New Jersey law and presumably other jurisdictions, a putative indemnitor will be bound by the underlying judgment provided the indemnitor was given an opportunity to be heard and defend. Implicit in Pacor's rationale is that a debtor may not be prejudiced by its failure to defend a lawsuit against a third-party common-law indemnitee without de facto depriving the debtor of the benefit of the automatic stay of litigation against it.

by the surety. Similarly, in A.H. Robins Co., the Fourth Circuit found that the bankruptcy court properly stayed litigation between products liability plaintiffs and non-debtor co-defendants named as additional insureds under the debtor's insurance policy. 828 F.2d 1023, 1024-26 (4th Cir. 1987), cert. denied, 485 U.S. 969 (1988). Yet another example is Halper v. Halper, 164 F.3d 830 (3d Cir. 1999), in which related-to jurisdiction was found over a dispute involving a guarantee by a non-debtor insider of the corporate debtor's obligation.

Each of Celotex, A.H. Robins and Halper can be explained at least in part by the recognition that they each involved property or rights belonging to the estate. In Celotex, it was the debtor's cash collateral, in A.H. Robins insurance proceeds, and in Halper a guarantee available as an alternative source of recovery for a creditor to take the pressure off the estate. This Court understands, of course, that related-to bankruptcy jurisdiction covers "more than simple proceedings involving the property of the debtor or the estate." Celotex, 514 U.S. at 308. The broader principle is that in each case the potential impact on the debtor's estate would have been direct with no intervening adjudication or joinder of issue necessary for judgment against the non-debtor to affect assets, re-prioritize creditors and thwart the bankruptcy court's administration of the estate.

Other courts, and the movants, have taken the language of

Pacor and Celotex to indicate a broader but less choate concept of related-to bankruptcy jurisdiction. They cite the passage quoted above stating that bankruptcy jurisdiction over a proceeding depends upon "whether the outcome of that proceeding could conceivably have any effect on the estate being administered . . . ." Pacor, 743 F.2d at 994, quoted in Celotex, 514 U.S. at 308 n.6. This Court does not perceive that this formulation of the rule is necessarily inconsistent with the cases discussed immediately above - "conceivable" or not, the bottom line is whether resolution of an ostensibly unrelated claim will have an "effect on the estate."

As others have noted before, a broader understanding of "conceivable" as defining bankruptcy jurisdiction produces an unworkable rule and bizarre conclusions regarding Congressional intent in the bankruptcy jurisdiction statute. "The optimist may argue that anything is 'conceivable,' and practical definition of this term of art must be tempered with reasonableness." In re Chargit, Inc., 81 B.R. 243, 247 (Bankr. S.D.N.Y. 1987). Judge Haden of the Southern District of West Virginia quoted the Seventh Circuit to these same litigants: "'common sense cautions against an open-ended interpretation of the "related to" language "in a universe where everything is related to everything else."'" In re Asbestos Litig., 271 B.R. 118, 124 (S.D. W. Va. 2001) (quoting Matter of FedPak Sys., Inc., 80 F.3d 207, 214 (7th Cir.

1996)(quoting G. Dunne, The Bottomless Pit of Bankruptcy Jurisdiction, 112 Banking L.J. 957 (Nov-Dec. 1995))). Approving Pacor, the Supreme Court warned that "a bankruptcy court's 'related to' jurisdiction cannot be limitless." Celotex, 514 U.S. at 308. That pronouncement and the rule of Pacor as discussed above are doctrinally sound and, more to the point, binding on this Court.

The movants urge upon this Court the reasoning of the Sixth Circuit's opinion In re Dow Corning Corp., 86 F.3d 482 (6th Cir. 1996), cert. denied, 519 U.S. 1071 (1997), which involved products liability co-defendants of a bankrupt manufacturer of silicone breast implants. The co-defendants removed the claims against them to the Dow Corning bankruptcy court on the theory that their rights of contribution or indemnification against the debtor under theories of joint and several liability made the claim against the non-debtors related to the bankruptcy. Disagreeing with the lower court, the Sixth Circuit found that "The potential for Dow Corning's being held liable to the non-debtors in claims for contribution or indemnification, or vice versa, suffices to establish a conceivable impact on the estate in bankruptcy." Id. at 493.

It may be that Dow Corning is impossible to reconcile with Pacor, which came to the opposite conclusion on a remarkably similar set of facts. There was no claim of contractual

indemnification, guarantee or other theory in which a judgment against the solvent co-defendants would bind the Dow Corning estate. In fact, not all of the putative indemnitees had even asserted an express claim of indemnification against the debtor, but relied upon their claim of legal entitlement should they choose to press such a claim. On the other hand, an important distinction between Dow Corning and this case is the large number of non-debtor co-defendants poised to transfer into the Federal-Mogul proceeding, compared with the handful of non-debtor co-defendants involved in the Dow Corning case.

In any event, the Sixth Circuit found that "the claims currently pending against the non-debtors give rise to contingent claims against Dow Corning which unquestionably could ripen into fixed claims." 86 F.3d at 494. This is wrong, however, as Pacor explained. Claims against the non-debtor could not ripen into claims against the debtor, the debtor would have been bound by nothing in the prior suit, and a separate action would be necessary to convert the non-debtors' liability into a claim against the estate.

This Court is unconvinced by the Dow Corning panel's main point of distinction between that case and Pacor. The Sixth Circuit reasoned that Pacor contained only one claim, whereas in Dow Corning many thousands of plaintiffs were suing the non-debtors. This Court regards with misgiving the proposition that

mere numbers of claims should prevail over articulable principles when it comes to defining federal subject matter jurisdiction. Moreover, for reasons explored more fully in the section below on abstention and remand, the number of claimants actually weighs against exerting bankruptcy jurisdiction in mass tort cases.

As the multiplicity of transfer motions now pending before this Court demonstrates, entire industries can be related by historical manufacturer/distributor relationships and each of the players may have at least a colorable claim of common-law indemnification against each of the others. Movants contend that the scope of their motions may be limited by the fact that only cases in which debtors' products are involved will be affected. As all are aware, however, the Friction Products Claims involve plaintiffs whose alleged occupational exposure involves every manufacturer whose products who might potentially have been present at the plaintiff's workplace. In this far from uncommon situation, there is no principled limit to the theory of <u>Dow Corning</u>. Could Congress have intended that the bankruptcy of a single player would have automatic, nation-wide impact in which every manufacturer and distributor and all tens of thousands of injured parties are concentrated in a single reorganization proceeding?

If the question did not answer itself, then a straightforward reading of <u>Pacor</u> will reveal the Third Circuit's

view on the matter. The possibility that the loser of an unrelated dispute might seek to recover its losses from the debtor does not make the dispute between non-debtors subject to the jurisdiction of the bankruptcy court. The Sixth Circuit's view to the contrary in Dow Corning has been described as a "remarkable extension of its [already] broad approach to relatedness." 1 William L. Norton, Jr., Norton Bankr. Law & Prac. 2d § 4.44. To the extent that the reasoning of the Sixth and Third Circuits conflict, this Court must follow that of the Third.

An attempt to state the converse of the Pacor rule by categorically listing what facts will establish related-to jurisdiction will probably be doomed; the possible scenarios are too varied to predict. However, the holdings of the Third Circuit since Pacor have a common element. The facts of these later cases suggest a rule that related-to bankruptcy jurisdiction will not extend to a dispute between non-debtors unless that dispute, by itself, creates at least the logical possibility that the estate will be affected.

Thus, in In re Marcus Hook Development Park, Inc., 943 F.2d 261 (3d Cir. 1991), inconsistent orders of the bankruptcy court left post-confirmation purchasers of the debtor's real estate unclear as to the status of liens on the property. The Court of Appeals found related-to jurisdiction, because sorting the

problem out would involve the continuing jurisdiction of the court and because disposition of the merits would affect the estate itself. Id. at 265. CoreStates Bank, N.A. v. Huls Am., Inc., 176 F.3d 187 (3d Cir. 1999), concerned an inter-creditor subordination agreement and a post-petition payment of $600,000 to one creditor alleged to be inconsistent with that agreement. Related-to jurisdiction existed because, inter alia, the subordinated debtor relinquished a much larger secured claim in exchange for the $600,000 payment and thus the resolution of dispute would have affected the confirmability of the plan.

Movants' reliance on the term "conceivable" in Pacor as setting the conceptual boundaries of related-to bankruptcy jurisdiction confuses the issues of whether a third-party dispute will inevitably or automatically affect the bankruptcy and the issue of the causal proximity between the foreign dispute and the resulting effect on the bankruptcy. In Pacor, regardless of who won the underlying personal injury claim, nothing in the bankruptcy would change without the filing and adjudication of a separate claim for indemnification. Conversely, in CoreStates, it was not beyond the boundaries of conceivablility that resolving the subordination dispute would have a substantial impact on the management of the bankruptcy, although it was at least equally conceivable that the creditors could have resolved it between themselves. However, had the dispute over the

$600,000 payment ripened into litigation, whatever effect it would have had on the bankruptcy would have been direct and immediate, requiring no separate legal step to alter the relationships of the creditors and the financial affairs of the debtor.

Cases from other circuits follow the pattern. The A.H. Robins Co. case is the one most prominently cited by the parties. 788 F.2d 994. In addition to their status as additional named insureds under the debtor's liability policy, each of the non-debtor co-defendants had rights of indemnification against the debtor, either by operation of state law as officers of the corporation, under the corporate bylaws, and/or by express agreement. Id. at 1007. The court found that the claims against the co-defendants were related to the bankruptcy (and that the injunction was properly granted), not only because the insurance policy was a key estate asset, but because the rights of indemnification were absolute and thus a judgment against the co-defendant indemnitee would effectively bind the debtor. Id. at 1008. The debtor's status as the real party at interest, potentially bound by the result of the non-debtor litigation, plainly established a sufficient nexus between suits against the individuals and the administration of the bankrupt's estate.

Other cases have produced the same result where key employees of the debtor were sued and where there was a right of

indemnification. In Belcufine v. Aloe, 112 F.3d 633 (3d Cir. 1997), officers of the debtor were personally liable to the debtor's employees for pre-petition retirement and vacation benefits by operation of Pennsylvania law. Like the Fourth Circuit in A.H. Robins, the Third Circuit found related-to jurisdiction in the bankruptcy court based upon the debtor's officers' right of indemnification in the debtor's corporate bylaws. Cf. McCartney v. Integra Nat'l Bank North, 106 F.3d 506 (3d Cir. 1997)(automatic stay extended to foreclosure action against non-debtor corporation where bankrupt principal had guaranteed corporation's obligation).

Thus, to the extent hard rules may be drawn from the cases, it seems settled that suits against principal or key-personnel indemnitees of the debtor may be within the bankruptcy court's related-to jurisdiction. Of course, in addition to the right of indemnity, key personnel also present the additional fact that they will typically have incurred the underlying liability in the course of acting on the debtor's behalf. This and the fact that the indemnity right may be a function of corporate bylaws or statute suggest that the courts may have viewed litigation against solvent corporate insiders as more inter-twined with the debtors' affairs, more certainly binding on the debtor, and therefore more directly affecting the rights of the debtor.

Where right of indemnification depends solely upon an

agreement and lacks the additional element of the non-debtor being otherwise related to the debtor, the situation arguably lies closer to the boundary of related-to jurisdiction. In A.H. Robins, one of the indemnitees did not enjoy indemnitee status by virtue of the corporate bylaws, but only under an indemnification agreement. There, however, the question of the common insurance policy created a link decisively favoring bankruptcy jurisdiction. Likewise in Halper, even though the genesis of the argument for extending bankruptcy jurisdiction was the indemnification agreements, these agreements ran between family members and insiders of a closely held company. Thus in Halper too there existed substantial facts in addition to the agreement that justified extending related-to jurisdiction over the dispute.

The Pacor panel's discussion of In re Brentano's, 27 B.R. 90 (Bankr. S.D.N.Y. 1983), has been read to support the view that a contractual indemnity rights against the debtor will bring a suit against the indemnitee within the bankruptcy court's jurisdiction. 743 F.2d at 995. In Brentano's, a non-debtor guaranteed the debtor's obligations to its landlord and the guarantor received in return from the debtor its promise to indemnify for any liability incurred on the guarantee. Distinguishing that situation from the common-law indemnity claims raised in Pacor, the Court of Appeals offered two points

of comparison: (1) that a judgment in favor of the landlord against the non-debtor guarantor would trigger the debtor's liability on the indemnity agreement, and (2) the landlord's claim against a guarantor of the estate would necessarily affect the landlord's status with respect to other creditors.

Pacor's discussion of Brentano was technically dictum, because in the end the Third Circuit found no related-to bankruptcy jurisdiction. However, appellate courts applying Pacor have recognized that "the clear implication of the decision is that, if there had been a contract to indemnify, a contrary result would have been in order." A.H. Robins, 788 F.2d at 1001. The clarity of that implication notwithstanding, cases since Pacor have failed to endorse the proposition that any contract of indemnification will support an extension of related-to jurisdiction. As will be discussed, this failure has its own implications too, relevant to the motions at bar.

As to the vast majority of the claims that are the subject of the Court's provisional transfer orders, the movants have produced no evidence whatsoever of even a bare agreement to indemnify running between the debtors and the solvent co-defendants. Of the Big Three, Ford Motor Company and General Motors rely only on affidavits of employees that recall one or more of the debtors as a supplier of brake parts to them. Likewise, the International Automakers proffer an employee

affidavit that stops well short of even suggesting that there was any promise to indemnify. Nor does Honeywell make a showing that an explicit agreement to indemnify existed.

The Court sees no justification to take the situation of these movants outside of the rule of Pacor. A judgment against them will not bind the debtors. No asset of the estate is threatened nor is any re-ordering of creditors in the offing. It is true that recovery by asbestos claimants against the movants may give rise to claims, indeed very substantial claims, against the debtors in the future. It is at that time, when the movants appear as creditors of the estate and the facts underlying the liability are adjudicated in the context of the bankruptcy, that the Friction Products Claims will affect the estate.

The Court perceives no distinction that would require a different result based upon the movants' contribution claim as opposed to the indemnification claim. In this context, the right of contribution is sufficiently analogous to the right of indemnification that it will not affect the estate in the manner contemplated by Pacor. The movants have presented no argument to the contrary. The Central District of Illinois rejected the suggestion that indemnification and contribution claims should be treated differently for the purposes of related-to jurisdiction in Nickum v. Brakegate, Ltd., 128 B.R. 648, 651 (C.D. Ill. 1991).

The claims against the movant Chrysler present a closer

question. Chrysler submits purchase orders that appear to incorporate by reference several substantial documents setting forth standard terms and conditions to which those purchase orders were subject. These documents are all dated from the 1970's and are supported by the affidavit of a retired Chrysler purchasing and procurement employee. The terms and conditions manuals state at relevant part:

> Seller shall defend, indemnify and protect Purchaser against all claims, liabilities, losses and damages due to injury to or death of any person and damage to or loss of any property arising out of improper performance or negligent work under this order or arising out of allegedly defective material or workmanship in the goods or services provided by this order . . . .

Of this clause, Judge Haden wrote:

> Considering Chrysler drafted the terms, which are extremely wide-ranging and generous to the drafter, which were not bargained for and are not present on the form presented to the suppliers (nor is any reference to them present on the form presented to Abex), the question whether this purported indemnity agreement would be determined to bind the suppliers is open and one not easily resolved. The Court is unwilling again to rest subject matter jurisdiction on this tenuous support.

In re Asbestos, 271 B.R. at 124.

This Court is in accord. To the extent that the validity of an indemnity agreement is in doubt, the directness between the third-party action and a judicial ruling that will affect the estate is attenuated. Moreover, as the jurisprudence shows,

cases in which related-to jurisdiction is founded solely on an indemnification agreement between otherwise unrelated parties are not the rule but the exception.

Even in the Brentano's case, the indemnitee was the largest unsecured creditor of the debtor. The indemnitee was also liable for eleven other guarantees it had made of the debtor's other lease obligations. 27 B.R. at 91. While the opinion is not explicit, plainly the guarantor/indemnitee was no stranger to the debtor. As noted, the Third Circuit's discussion of Brentano's was not necessary to its holding in Pacor. Even on its face, however, the Third Circuit's approval of Brentano's leaves open whether the Third Circuit would base a substantial extension of related-to jurisdiction on an indemnification clause such as the one relied upon by Chrysler.

Citing Brentano's only as a contrasting example, the Pacor panel did not disclose that the Southern District of New York had remanded the matter to the bankruptcy judge for further consideration of the jurisdictional issue. In re Brentano's, Inc., 36 B.R. 90 (S.D.N.Y. 1984). The District Court opined that exercising jurisdiction would merely substitute the landlord's claim for what otherwise would be the indemnitee's claim against the estate. In light of the fact that claims against the non-debtor guarantor had settled claims on the other eleven guarantees since the bankruptcy court had ruled, the Southern

District found it "especially apparent that a stay of the [remaining state litigation] . . . is not necessary to an efficient and effective disposition of the bankruptcy proceedings relating to Brentano's estate." Id. at 92.

Of course Brentano's can be read as Pacor did, to hold that an indemnification agreement may create bankruptcy jurisdiction over the underlying liability, with the possible proviso that the indemnitee be important to resolving the bankruptcy. On the other hand, that case may also be read to suggest that an indemnity agreement alone will not suffice. This is particularly true where other parties are similarly situated and their indemnity claims against the non-debtor will ultimately be presented as unsecured claims by them against the estate.

Here Ford, General Motors, Honeywell and the International Automakers all derive their claims against the estate from the same products as Chrysler. For the reasons stated, there is no jurisdiction in this Court over these claims. Instead, all of these claims by movants other than Chrysler clearly must be raised against the debtor, if at all, as unsecured claims following the resolution of the underlying personal injury suits against them. Chrysler's claim that it alone is sufficiently central to the bankruptcy is severely diluted as a result, notwithstanding the indemnification language in its purchasing materials.

More fundamentally, the Court does not believe that a manufacturer may write its own invitation to the table of any of its suppliers' bankruptcies by including a boilerplate indemnification clause in its purchase orders. The routine nature of this kind of arrangement and lack of other connections between the parties makes this too thin a thread with which to pull Chrysler into the Federal-Mogul bankruptcy. Indeed, as more than one court has observed, movants' failure to actively pursue their alleged rights of indemnity against the debtors in the past undermines their claim now that these indemnity arrangements should be considered an important component of the administration of the bankruptcy. See Garlock, 2001 WL 1669714 at *11; In re Asbestos, 271 B.R. at 124 n.8. Without attempting to state a blanket rule, in this case Chrysler's purchase order indemnification clause does not adequately distinguish its indemnification claim from that of all of the debtors' other customers with indemnification claims such that the claims against Chrysler are uniquely subject to the jurisdiction of this Court.

2. **Abstention and Equitable Remand**

As set forth in the preceding section, the Court finds that it lacks subject matter jurisdiction over the Friction Products Claims. This, of course, would stand as an adequate ground to

deny the transfer motion and to remand them to the state courts from which they were removed. However, the Court has acknowledged that subject matter jurisdiction is at least a closer question with respect to Chrysler. To remove any doubt, therefore, and for the sake of a complete record, the Court also finds as an alternative, independent ground that it would exercise its discretion to abstain from hearing the Friction Product Claims pursuant to 28 U.S.C. § 1334(c)(1) and remand them pursuant to 28 U.S.C. § 1452.

The Court pauses to address respondents' argument that abstention is mandatory under 28 U.S.C. § 1334(c)(2). This statute requires that the Court abstain where certain factors are present, including that the matter is considered "non-core." By definition, matters that are merely related to the bankruptcy proceeding are non-core proceedings. Movants counter that personal injury claims are not subject to mandatory abstention by operation of 28 U.S.C. § 157(b)(4), which carves out from the mandatory abstention statute those proceedings made non-core by operation of 28 U.S.C. § 157(b)(2)(B).

Proceedings defined as non-core by section 157(b)(2)(B) are claims involving "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11." Respondents reply that the Friction Products Claims

are not "claims against the estate," therefore not covered by section 157(b)(2)(B), and therefore not exempted from mandatory abstention by section 157(b)(4).

Movants respond that the Friction Products Claims are, in effect, claims against the bankrupts' estates because really it is "[d]ebtors' products that are on trial." Brief of Unsecured Creditors' Committee at 31. Of course, movants' entire position is premised on the idea that the debtors stand in their shoes by virtue of the movants' right of indemnity for their asbestos products liability. Thus, movants' attempt to avoid mandatory abstention must rise and fall on the same argument as their claim of related-to jurisdiction.

Of course, the Court has already rejected the proposition that the Friction Products Claims are related to the bankruptcy proceeding, on the grounds that there is an insufficient link between these claims against non-debtors and the debtors' estates. Even had the Court not already rejected the related-to jurisdictional argument, the argument against mandatory abstention under section 157 would be far from clear. Notwithstanding the undeniable overlap between the issues, it is a far step from finding that a claim against a non-debtor is related to a bankruptcy proceeding to finding that a claim against a non-debtor is actually a claim directly against the estate for the purposes of section 157(b)(2)(B).

The Court need not resolve this finer point of statutory interpretation, however. The Court will abstain in any event under the permissive abstention provision of 28 U.S.C. § 1334(c)(1) and remand the Friction Product Claims for equitable reasons under 28 U.S.C. § 1452(b). Indeed, the facts of this case leave no reasonable conclusion other than that the Court should exercise its discretion to abstain and to remand. Fairness, comity and preserving the integrity of this Court's management of the bankruptcy compel this result.

The statute lists as grounds for discretionary abstention the interest of justice, comity with the state courts and respect for state law. 28 U.S.C. § 1334(c)(1). The courts have developed a list of factors to be considered when deciding to abstain under section 1334(c)(1) and these are identical to those relevant to equitable remand. _See_ _Balcor/Morristown Ltd. P'ship v. Vector Whippany Assocs._, 181 B.R. 781, 788 (D.N.J. 1995); _In re Joshua Slocum, Ltd._, 109 B.R. 101, 105 (E.D. Pa. 1989). While the list varies in the opinions, it generally includes:

> (1) the effect on the efficient administration of the bankruptcy estate;
>
> (2) the extent to which issues of state law predominate;
>
> (3) the difficulty or unsettled nature of the applicable state law;
>
> (4) whether there is an established state court proceeding on the same issues;
>
> (5) the degree of relatedness or remoteness of the

proceeding to the main bankruptcy case;

(6) the existence of the right to a jury trial; and

(7) the likelihood that the bankruptcy proceeding represents forum-shopping by the petitioner.

In re Donington, Karcher, Salmond, Ronan & Rainone, P.A., 194 B.R. 750, 759-60 (D.N.J. 1996); Balcor, 181 B.R. at 793; In re Foster, 105 B.R. 746, 749-50 (Bankr. M.D. Ga. 1989) (listing a total of 12 factors).

It requires scant discussion to perceive that most if not all of these factors weigh very heavily in favor of abstention and remand. Previously stated, there is no principled end to the movants' argument that would prevent centralizing virtually all Friction Product asbestos litigation, nationwide, in this bankruptcy. Indeed, already large numbers of other manufacturers and other users of Friction Products have followed the movants' lead, removed claims pending against them in state courts, and filed motions to transfer them here. This Court is convinced that transfer of the movants' claims would be a disaster for the orderly management of this chapter 11 proceeding.

Moreover, looking pragmatically at the situation before it, the Court must recognize that there is no way that the benefit to the administration of the estate from unifying all of the Friction Products Claims in this chapter 11 case can ever be fully realized. First, while many Friction Products defendants have moved to transfer the claims against them to this Court,

many have not. Thus, the problem of indemnification claims being raised against the estate will always be a factor and, in all likelihood, a major factor in the reorganization.

Second, as movants themselves have complained, a number of courts around the country were either not bound by this Court's provisional transfer order as a function of timing, or failed to respect this Court's Order. Many of these cases have already been remanded to state court, further undermining the benefit to be gained from continuing to entertain those Friction Products Claims still subject to the Court's Provisional Order. Finally, in Texas and perhaps elsewhere, Friction Products Claimants have dismissed the debtor from their state actions, with prejudice. This, the Fifth Circuit holds, cuts off any right of indemnification against the debtor under Texas law. Garlock, 2001 WL 1669714.

Thus the reality of timing and the actions of other courts have made illusory much of the gain in efficiency and consistency of adjudication postulated by movants as grounds for the relief they seek. Whatever is decided in this Court, the movants will be forced to litigate claims based upon Federal-Mogul friction products in diverse jurisdictions. The estate will still encounter indemnification claims from former co-defendants against whom state-court judgments have been rendered. To the extent this result comes to pass, efficiency will be lost, not

gained, by entertaining the Friction Products Claims in this Court, and the risk of inconsistent rulings exacerbated.

The Court acknowledges that movants postulate a plausible method for dealing with common issues of causation by means of common-issue summary judgment and trials under Federal Rule of Civil Procedure 42. But, setting aside for the moment whether this method adequately protects the constitutional and procedural rights of the personal injury claimants, whether it would succeed in streamlining the adjudication of claims is hotly and legitimately debated. Movants could well fail to establish a lack of genuine dispute over medical causation with respect to Friction Products. Depending on what the scientific evidence shows, it may well appear that causation issues are not sufficiently common between litigants to permit Rule 42 trials.

These issues must be either confronted or successfully negotiated with respect to the claims directly against the debtors. Any allure in movants' scheme depends on their ability successfully to avoid these pitfalls with respect to the transferred Friction Products Claims. This success is, to say the least, not assured. Yet, should movants fail to keep the proceedings to their script, all that the transfer would have accomplished would be an exponential increase in the already challenging task before the Court and the parties. If one adds to the mix all of the other would-be Friction Products

transferees awaiting the outcome of this motion, the loom of chaos is palpable.

Nor is the transfer of Friction Products Claims cost-free, even assuming movants are successful in litigating common issues of causation and science. Because these cases have been removed, by definition a state court proceeding had previously been commenced. Many are well advanced. While sorting out the commercial interests of creditors and the reorganization of these corporate debtors, the Court will not forget that each of the tens of thousands of claims before it involves an individual with a personal injury claim. Respondents have argued convincingly that a appreciable number of these persons are presently very sick and some are terminally ill. While this Court intends to proceed with dispatch, it would be vain to conclude that claims will be resolved much more quickly here than in already-filed state court actions.

To give movants the benefit of proceeding under the bankruptcy code at the expense of these litigants would clearly pose hardship in individual cases. Some will expire who otherwise would have seen their cases tried. In some jurisdictions, rights will die with these disappointed litigants. As to all, solvent defendants will be missing from the ongoing state proceedings and the plaintiff's choice of forum will be lost as to them. Where, as here, the resulting benefit is so

equivocal, the balance must tilt sharply toward abstention and remand.

Others of the factors are quickly analyzed. State law obviously predominates. The "degree of relatedness or remoteness" of the state proceeding has already been discussed in the preceding section of this Opinion. It suffices to say that, even if related-to jurisdiction existed over the Friction Product Claims, the degree of remoteness between them and the main bankruptcy case is substantial. Obviously, Friction Products claimants have a right to a jury trial of triable issues of fact.

Finally, the possibility that the movants are forum shopping is too obvious to be belabored. Some jurisdictions have been notoriously unfavorable to asbestos defendants. Movants understandably believe that they would gain an advantage if the claims against them were centralized in a federal court and they could gain the benefit of a channeling injunction under 11 U.S.C. § 524. The Court expresses no disapproval of these desires. Indeed, movants argue that, were they to bear fruit, the estate might also be the beneficiary.[4] These benefits of a change in forum do not, however, justify the affront to state and federal

---

[4] The Court will not repeat the several obstacles that lie between these aspirations and reality. Assuming that centralizing of claims and extending the benefits of section 524 is legally possible, whether it may be accomplished for a sufficient percentage of the pending Friction Product Claims to constitute a real benefit to the estate is highly problematic from a practical standpoint.

comity inherent in the removal of solvent defendants from ongoing state lawsuits into a federal bankruptcy.

One party has argued that equitable remand is impermissible without a case-by-case inquiry into the facts of each case. While the Court has no quarrel with this as a general proposition, the parties well know that such an inquiry would be prohibitively time-consuming here. Yet it is patently unfair for the movants to remove claims against them en masse and then claim that a patently impossible case-by-case procedure is mandatory before the claims may be remanded for equitable reasons. As the Friction Products Claims have been explained to the Court by counsel, they contain sufficient common features that will permit the application of the equitable factors discussed here to be applied to each of them. It lessens the vitality of their own premise for movants to argue otherwise.

Thus the interests of justice and comity weigh heavily in favor of abstention and remand of the Friction Products Claims. Respect for state law is perhaps less implicated here, because a bankruptcy court must apply state law to claims before it in any event and the state law questions posed by the Friction Products Claims will not be especially complex or difficult. Nonetheless, for the reasons stated, the Court finds that the other factors weigh so strongly that the Court will use its discretion to abstain from exercising jurisdiction over the Friction Products

claims and they will be remanded, pursuant to 28 U.S.C. §§ 1334(c)(1) and 1452(b).

Recognizing that it is rare for a District Court in one state to remand a matter to the state courts of another state, (let alone to the courts of all of the different states), and although the parties did not raise this issue, the Court will address this last aspect of its Order. First, it appears plain to the Court that the question is really just one of inter-jurisdictional bookkeeping. Either this Court will remand directly to the states, or it will vacate its provisional transfer Order and send the cases back to the several districts from which they came. If this Court were to choose the latter course, each of the other districts would then be faced with the task of either applying the ruling of this Court and issuing an order of remand, or addressing for themselves whether to remand or abstain.

The logic of the statutory structure suggests that this latter course, with its attendant waste of judicial energy, is unnecessary. It is common ground that 28 U.S.C. § 157 permits transfer between districts of personal injury claims related to a bankruptcy case.[5] It is fundamental that this Court has the

[5] Prior to the Court's ruling, respondents may well have wished to argue that this Court lacked power to transfer the claims to itself out of other districts. Having won the day in this forum, the Court presumes that this wish of respondents has abated. Of course, movants cannot argue that this Court lacks

right, indeed the duty, to inquire into its subject matter jurisdiction at any time it appears in doubt. Finally, 28 U.S.C. § 1452 grants the Court the discretion to remand, without specifying to where. Yet, remand, by definition, must return the remanded matter to the court from which it was removed. Petrofsky v. ARA Group, Inc., 878 F. Supp. 85 (S.D. Tex. 1995).

It is also true, however, that section 1452 begins with the phrase "[t]he court to which such claim or cause of action is removed" has the power of remand. Of course, this Court stands in the shoes of the transferor district for all other purposes; it is not clear what interest would be served by excepting the power of remand from the others conferred by the transfer. Moreover, ex hypothesi, this Court and all federal courts lack subject matter jurisdiction over the claims at issue. It would be nonsensical for this court, lacking subject matter jurisdiction, to transfer the matter back to the transferor districts, which also lack subject matter jurisdiction, so that they may be remanded from the local federal courthouse. Finally, limiting the power of remand only to the original district of removal would create an imbalance between the flexible powers of transferor and transferee courts and present all too tempting a motive for potential forum shoppers.

---

the power to do that which they were previously successful in persuading this Court to do.

The Court has been informed that many state court systems maintain in extremis dockets of Friction Products and other asbestos claims for plaintiffs who may die before trial if their cases are not reached promptly. It would ill-behoove the federal courts, having decided that both that jurisdiction is lacking and that equitable factors require remand, to delay any further these in extremis litigants by a pointless additional round of re-transfer to the several districts and further proceedings on remand. This Court is satisfied that its inherent powers, those "necessary to the exercise of all others," In re Prudential Sales Practices Litig. Agent Actions, ___ F.3d ___, 2002 WL 90847 (3d Cir., Jan. 24, 2002) (quoting Fellheimer, Eichen & Braverman, P. C., v. Charter Technologies, Inc., 57 F.3d 1215, 1224 (3d Cir. 1995)) (further quotations omitted), resolve any lingering questions in favor of substance over form and in favor of immediate relief over punctilio. Therefore, the Court has remanded all of the Friction Products Claims directly to the several state courts from which they were removed.

**CONCLUSION**

For the reasons set forth above, the Court finds that it lacks subject matter jurisdiction over the Friction Products Claims pending before it pursuant to the Court's Provisional Transfer Orders. In the alternative, the Court will exercise its

discretion to abstain from exercising jurisdiction over the Friction Products Claims and will remand them to the state courts from which they were removed. The motion to finally transfer these claims to this Court will be denied.

The Order corresponding to the rulings of this Opinion has already been issued.

Dated: February 15, 2002

ALFRED M. WOLIN, U.S.D.J.